UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**  'O'

| Case No. | 2:14-cr-00648-CAS-9 | Date | April 2, 2018 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | (PUNJABI) – Not Present | | |

| CATHERINE JEANG | NOT PRESENT | CAROL CHEN, NOT PRESENT<br>ELLEN LANSDEN, NOT PRESENT |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/ Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| HARINDER SINGH | NOT | | X | PETER JOHNSON | NOT | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT HARINDER SINGH'S MOTION FOR A NEW TRIAL AND FOR JUDGMENT OF ACQUITTAL (Dkt. 895, filed February 2, 2018)

## I. INTRODUCTION & BACKGROUND

On November 13, 2014, a grand jury returned an indictment charging Harinder Singh[1] with (1) conspiracy to launder money in violation of 18 U.S.C. § 1956, (2) conspiracy to operate an unlicensed money remitting business in violation of 18 U.S.C. § 371, and (3) operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. Dkt. 1 ("Indictment"). The Indictment also charges 21 other alleged co-conspirators for their involvement in what the Government describes as a "large-scale Hawala money laundering organization."

After a seven-day trial, a federal jury convicted defendant of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956, as charged in count one. Dkt. 889. The jury also convicted defendant of conspiracy to operate an unlicensed money remitting business in violation of 18 U.S.C. § 371, as charged in count two, and of operating an unlicensed money remitting business in violation of 18 U.S.C. § 1960, as charged in count three. Id.

---

[1] For purposes of this order, the Court refers to Harinder Singh as "defendant" given that there are co-defendants in this case who share his last name.

On February 2, 2018, defendant filed the instant motion for a new trial and a judgment of acquittal on counts one, two, and three. Dkt. 895 ("Motion"). The government filed an opposition on February 12, 2018. Dkt. 900 ("Opp'n"). The Court held a hearing on March 13, 2018.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARDS

### A. Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29(c) provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as a challenge to the sufficiency of the evidence. United States v. Ladum, 141 F.3d 1328, 1337 (9th Cir. 1998). When considering a motion for judgment of acquittal, the Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hursh, 217 F.3d. 761, 767 (9th Cir. 2000). This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010). "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201–02 (9th Cir. 2000).

### B. Motion for a New Trial under Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." United States v. A. Lanoy Alston, D.M.D., P.C., 974 F.2d 1206, 1211 (9th Cir. 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000). A motion for a new trial is "directed to the discretion of the district

judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).

## III. DISCUSSION

### A. Defendant's Motion for a Judgment of Acquittal

Defendant argues that a judgment of acquittal should be entered as to counts one, two, and three. Motion at 2–3. Defendant does not present any argument or authority in support of his motion for acquittal, and instead moves "generally to preserve the sufficiency of evidence claim for the appeal." Id. (citing United States v. Viayra, 365 F.3d 790,793 (9th Cir. 2004)). In opposition, the government contends that the convictions for counts one, two, and three are amply supported by the evidence introduced at trial. Opp'n at 13–20.

#### 1. Evidence

During the seven-day trial, the government offered testimony from numerous witnesses including Drug Enforcement Administration ("DEA") special agent, Lindsay T. Burns; money laundering expert witness, Donald Semesky; cooperating co-defendant witness, Taran Singh; cooperating co-defendant witness, Gurkaran Issphunani ("Karan"); DEA special agent Khanh Vo; cooperating co-defendant witness Sanjiv Wadwha; and California Highway Patrol Department officer Darren Nannini. The government produced a ledger seized from defendant during the search of his residence, offered two bags of cash that were found in defendant's car and residence, and also offered English-language transcripts of numerous authorized wiretap calls. Defendant did not call any witnesses.

As part of its case-in-chief, the government argued that defendant was part of a Hawala money-laundering scheme involving drug proceeds from international drug trafficking organizations. The government put on expert testimony about the differences between "traditional Hawala" schemes and "black Hawala" schemes, and also elicited testimony about how money was transferred throughout these Hawala systems.

Multiple law enforcement personnel took the stand during trial to detail their surveillance observations of defendant's meetings with individuals, including Hawala brokers Ramesh Singh, T. Singh, Harmeet Singh, and other non-ethnic Indians. The jury was provided with English-language transcripts for wiretap calls involving defendant.

Furthermore, the government provided evidence from multiple witnesses who testified that after an October 16, 2012 traffic stop on defendant's vehicle and a search of his residence, police seized approximately $274,980 and $388,100 in bulk cash, respectively. CHP officer Nannini testified that defendant stated that the bags in the rear passenger compartment of his

vehicle—subsequently determined to contain $274,980 in stacks of $50 and $100 bills—were his wife's shoes. Nannini also testified that during the stop defendant called his wife to "ask her about her shoes" in a language that Nannini did not recognize. In addition, Special Agent Vo explained that on the same day— October 16, 2012—Vo was conducting surveillance at defendant's residence when he and his supervisor approached defendant's wife, who was carrying a bag that had brick-shapes of currency sticking out. Vo testified that defendant's wife dropped the bag and disclaimed ownership of the bag. The bag was subsequently determined to contain $388,100 in bulk cash.

Cooperating co-defendants—Isshpunani, Wadwha, and T. Singh—testified during the trial as to how the "Hawala" scheme worked and the manner in which they, along with defendant, helped to transfer hundreds of thousand of dollars in bulk cash to and within the Southern California area.

Other pertinent pieces of evidence admitted into evidence included self-authenticating, certified copies of documents showing defendant's lack of registration with the Department of Treasury and with the State of California as a money remitting business.

       **2.**      **Elements of the Crimes Charged**

Considering the aforementioned evidence in the light most favorable to the prosecution, the Court must determine whether this evidence is adequate to allow any rational trier of fact to find the essential elements of the crimes charged beyond a reasonable doubt.

With respect to count one, and as set forth in the Court's jury instructions, for a defendant to be found guilty of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), the government must prove that:

> First, beginning on an unknown date and continuing until on or about December 8, 2012, there was an agreement between two or more persons to launder or attempt to launder money in violation of Section 1956(a)(1)(B) of Title 18 of the United States Code; and Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

<u>See</u> Ninth Cir. Model Crim. Jury Instr. No. 8.2 (2010 ed.); (Dkt. 880, Court Instr. 15.) In turn, the elements necessary to prove a violation of section 1956(a)(1)(B) consist of the following:

> First, the defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of drug trafficking; Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and Third,

      the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

See Ninth Cir. Model Crim. Jury Instr. No. 8.147 (2010 ed.); (Dkt. 880, Court Instr. 16.). At oral argument, defendant's counsel noted that the second element focuses on defendant's personal knowledge of unlawful activity, and argued that there is no evidence in the record that anyone told defendant that the proceeds stemmed from unlawful activity. Defendant's counsel further argued that the deliberate ignorance jury instruction compounds this problem, insofar as the record evidence is simply insufficient to demonstrate that defendant knew the proceeds were from some form of unlawful activity. In response, counsel for the government argued that counsel for defendant conflated the first two elements necessary to prove a violation of section 1956(a)(1)(B). In particular, the government argued that, with respect to the first element, it was only obligated to prove that the money represented the proceeds of drug trafficking, not that defendant *knew* the money represented the proceeds of drug trafficking. Thus, in the government's view, the deliberate ignorance jury instruction concerns defendant's deliberate ignorance of whether, with respect to the second element, the money at issue constituted proceeds of some form of unlawful activity. The government asserted that the evidence in the record confirms that defendant knew that the money constituted proceeds of unlawful activity.

      The Court finds that the testimony and exhibits at trial established each of the elements necessary to prove violations of sections 1956(h) and 1956(a)(1)(B) beyond a reasonable doubt, particularly when viewed in the light most favorable to the government as required by Rule 29. Viewed in this light, each of the cooperating co-defendant witness' testimony established that there was an agreement between two or more people to use the Hawala system to engage in money laundering, and that defendant became a member of this Hawala system knowing that the objective was to conceal or disguise the nature, location, source, ownership, or control of the large sums of money being transferred, in violation of section 1956(h). With respect to the evidence necessary to demonstrate a violation of section 1956(a)(1)(B), the testimony of Special Agent Burns indicates that drug seizures occurred in this case of approximately 73 pounds of methamphetamine and 10 kilos of cocaine in one instance, and 15 pounds of meth and 20 kilos of cocaine in another, and Karan's testimony demonstrates that the money seized in this case originated from a drug trafficker, Deepinder Gil Singh ("Pindi"). Moreover, the witness' testimony demonstrates that defendant knew or was deliberately ignorant of the fact that the money he was collecting constituted the proceeds of some form of unlawful activity, and demonstrates that defendant attempted to conceal his involvement in the money laundering conspiracy. For example, Karan and Taran both testified that the large amounts of money being transferred indicated to them that the money was "dirty," and defendant's use of coded language between co-conspirators demonstrates that defendant was similarly aware that the money he was collecting constituted the proceeds of unlawful activity. See Ex. 114. Moreover, Officer Nannini's testimony revealed that defendant lied during the October 16, 2012 stop when

defendant told law enforcement officers that the $274,980 contained in plastic bags in the backseat of his car was, instead, a bag containing his wife's shoes. Accordingly, viewing the evidence in the light most favorable to the government, the Court finds that the evidence supports the jury's verdict on count one for conspiracy to commit money laundering.

With respect to count two, and as set forth in the Court's jury instructions, in order for defendant to be found guilty of conspiracy to operate an unlicensed transmitting business in violation of 18 U.S.C. section 371, the government must prove beyond a reasonable doubt that:

> First, beginning on an unknown date and continuing until on or about December 8, 2012, there was an agreement between two or more persons to commit the crime of operating an unlicensed money transmitting business; Second, the defendant became a member of the conspiracy knowing its object and intending to help accomplish it; and Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

See 18 U.S.C. § 371; (Dkt. 880, Court Instr. 18.). With respect to count three, and as set forth in the Court's jury instructions, in order for defendant to be found guilty of operating an unlicensed transmitting business in violation of 18 U.S.C. section 1960, the government must prove beyond a reasonable doubt that:

> First, defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business affecting interstate or foreign commerce; Second, (a) the business was not registered with the Department of Treasury, Financial Crimes Enforcement Network ("FINCEN"), as required under 31 U.S.C. § 5330 and the requirements set forth in 31 C.F.R. § 103.41(c) (18 U.S.C. §§ 1960(a), (b)(1)(B)), (c); and Third, the defendant knew that the business was not registered/ licensed.

See 18 U.S.C. § 1960; (Dkt. 880, Court Instr. 20.) The evidence demonstrates that defendant conducted, controlled, managed, supervised, and directed a money transmitting business. For example, while defendant had originally worked on behalf of Sucha Singh, defendant admitted in a call on October 15, 2012 with T. Singh that he hid his Hawala transactions from Sucha Singh. In particular, and viewed in the light most favorable to the government, the evidence demonstrates that defendant operated his own Hawala business and worked directly and in agreement with Issphunani in collecting and delivering large amounts of money. Moreover, it was undisputed that defendant did not register the money transmitting business with FINCEN. Accordingly, the Court finds that the evidence is sufficient for a rational trier of fact to find defendant guilty of counts two and three.

In light of the evidence set forth above, and viewing the evidence in the light most favorable to the government, the Court concludes that defendant has failed to demonstrate that he is entitled to a judgment of acquittal with respect to counts one, two, and three.

### B. Defendant's Motion for a New Trial

Defendant requests the Court to grant a new trial on counts one, two, and three "in the interests of justice." Motion at 3–4. Defendant does not explain how the interests of justice warrant a new trial, and fails to identify new or exculpatory evidence. In opposition, the government contends in a one-paragraph assertion that defendant fails to identify any interest of justice that warrants a new trial, and that defendant fails to point to new or exculpatory evidence. Opp'n at 21. Moreover, the government argues that the evidence preponderates *highly* in favor of the guilty verdicts returned by the jury. Id.

In light of the evidence discussed *supra*—which the Court concludes supports defendant's conviction for counts one, two, and three—this case is not exceptional as the evidence does not "preponderate[] heavily against the verdict." See Pimentel, 654 F.2d 538 at 545. Accordingly, the Court concludes that no basis has been shown for granting the motion for a new trial.

In reaching this conclusion that the Court will not grant a new trial, the Court has considered in particular its ruling limiting the scope of cross-examination of a cooperating witness, Sanjiv Wadwha, on the grounds of avoiding a mini-trial regarding whether Wadwha participated in a murder-for-hire plot concerning an informant in this case, T. Singh.

At the outset of trial, defense counsel requested a short continuance in light of new information he received from the government that Wadwha may have been involved in a murder-for-hire plot against cooperating witness T. Singh. Defense counsel requested the continuance in order to review the FBI investigation of Wadwha's actions and to conduct his own independent investigation. In response, the government asserted that the FBI had conducted an investigation and concluded that the allegations of Wadwha's involvement in a murder-for-hire plot were unsubstantiated.[2] The government informed the Court that it had provided information from the FBI's investigation to defense counsel. Although the Court ultimately declined to continue the trial given the Court's full docket, trial proceedings were reorganized to enable defense counsel to conduct and complete his requested investigation.

---

[2]   The prosecution was screened from this investigation.

**CRIMINAL MINUTES – GENERAL**            **'O'**

At trial, defense counsel sought to cross-examine Wadwha regarding the alleged murder-for-hire plot against T. Singh.[3] Specifically, defense counsel argued that cross-examination regarding the alleged murder-for-hire plot would be probative of Wadwha's willingness to lie in an attempt to obtain a lesser sentence than had already been imposed by this Court, particularly because the murder-for-hire plot allegedly occurred while Wadwha was awaiting trial, before he had pled guilty. Defense counsel also argued that he was entitled to refresh Wadwha's recollection of the alleged murder-for-hire plot with government-produced audio recordings.

The Court ruled that it would not allow unfettered cross-examination regarding Wadwha's efforts to threaten or intimidate T. Singh, particularly in light of the FBI's conclusion that the alleged murder-for-hire plot against T. Singh was unsubstantiated. The Court also ruled that it would preclude admission of audio recordings and evidence from the FBI's investigation of Wadwha's actions. The Court reasoned that this limitation in scope of cross-examination was necessary to prevent impeachment of Wadwha on a collateral matter and to avoid a mini-trial on the issue of the murder-for-hire plot regarding T. Singh. In addition, the Court warned that if Wadwha denied on cross-examination that he engaged in any acts to effectuate a murder-for-hire of T. Singh, defense counsel would be "stuck" with that answer and under Federal Rule of Evidence 608 would be precluded from impeaching Wadwha with extrinsic evidence. In the event that Wadwha could not recall his involvement in the alleged murder-for-hire plot concerning T. Singh, the Court indicated that it would take a recess to determine whether defense counsel would be entitled, under Federal Rule of Evidence 612, to refresh Wadwha's recollection with audio recordings that the government had produced to defendant.

During cross-examination, Wadwha denied taking part in a murder-for-hire plot against T. Singh. Defense counsel did not attempt to ask further questions regarding this alleged murder-for-hire plot.

Under Federal Rule of Evidence 608(b), specific instances of conduct concerning the witness's character for truthfulness may not be proven by extrinsic evidence, although they may be inquired into upon cross-examination of the witness. In light of the fact that defense counsel was precluded under Rule 608(b) from offering extrinsic evidence regarding Wadwha's alleged role in a murder-for-hire plot, the Court finds no reason to depart from its ruling limiting the scope of Wadwha's cross-examination. Indeed, under Federal Rule of Evidence 403, the

---

[3] Defense counsel also moved to preclude examination about threats that defendant allegedly made against Wadwha's family in India. The government informed the Court that it had counseled Wadwha not to discuss the matter. The Court noted that both parties agreed that this line of questioning was improper, and that it would entertain a post-trial motion for a mistrial if Wadwha nonetheless discussed defendant's alleged threats against his family.

probative value of Wadwha's involvement in a murder-for-hire plot was substantially outweighed by the danger of confusing the issues before the jury and wasting time with a mini-trial. Given that the murder-for-hire allegations against Wadwha were found to be unsubstantiated, that the allegations concerned cooperating witness T. Singh, who was cooperating against both Wadwha and defendant, and that a full-blown trial would be needed on the issue of whether the alleged threats were made, under Rule 403 the relevance of the alleged murder-for-hire plot was substantially outweighed by the risk of confusing the issues and undue delay.

    Accordingly, as the Court determined at trial, permitting defense counsel to elicit unfettered testimony regarding the allegations of the murder-for-hire plot against T. Singh would likely confuse the jury and cause undue delay—and in any event this testimony would exceed the scope of permissible cross-examination under Rule 608(b). Moreover, the Court finds that even if it had permitted unfettered cross-examination of Wadwha regarding his involvement in the alleged murder-for-hire plot, other co-defendants—Issphunani and T. Singh—testified as cooperating witnesses against defendant, and their testimony provided substantial evidence regarding defendant's involvement in the crimes charged. This finding is particularly warranted after a review of the evidence set forth above, which demonstrates that the testimony of the other cooperating witnesses substantially implicates defendant in the charges identified in counts one, two, and three.

    Accordingly, given the evidence identified above and given the propriety of the Court's limitation of Wadwha's cross-examination, the Court finds that this case is not an exceptional case warranting a new trial.

## IV.   CONCLUSION

    In accordance with the foregoing, the Court **DENIES** defendant's motion for a new trial and **DENIES** defendant's motion for acquittal.

    IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|--|--|--|--|--|
|  | Initials of Deputy Clerk | | CMJ | |