```
                     UNITED STATES OF AMERICA
                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION

                              - - -
                   HONORABLE CHRISTINA A. SNYDER
                UNITED STATES DISTRICT JUDGE PRESIDING
                              - - -


    UNITED STATES OF AMERICA,       )
                                    )
              PLAINTIFF,             )
                                    )
    VS.                              )   CASE NO.:
                                    )   CR 14-648-CAS
    HARINDER SINGH,                  )
                                    )
              DEFENDANT.             )
                                    )
    _____)



               REPORTER'S TRANSCRIPT OF PROCEEDINGS

                   WEDNESDAY, JULY 18, 2018

                     LOS ANGELES, CALIFORNIA
```

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
PH: (213)894-0374

```
 1
 2    APPEARANCES OF COUNSEL:
 3    ON BEHALF OF PLAINTIFF:
 4              BY:  CAROL CHEN
                ASSISTANT UNITED STATES ATTORNEY
 5
                1100 UNITED STATES COURTHOUSE
 6              312 NORTH SPRING STREET
                LOS ANGELES, CA 90012
 7
 8    ON BEHALF OF DEFENDANT:
 9              LAW OFFICES OF PETER JOHNSON
                BY:  PETER JOHNSON, ESQ.
10              409 N. PACIFIC COAST HIGHWAY, 651
                REDONDO BEACH, CA 90027
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

| | | |
|---|---|---|
| | INDEX | |
| PROCEEDINGS | | PAGE |
| SENTENCING | | 4 |

```
 1    LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 18, 2018; 12:31 P.M.
 2                            - - -
 3              THE CLERK:  Calling Calendar Item No. 1.
 4              Case No. CR 14-648.
 5              United States of America versus Harinder Singh.
 6              Counsel, please state your appearances.
 7              MS. CHEN:  Good afternoon, Your Honor.  Carol Chen
 8    on behalf of the United States.  I would like to apologize,
 9    Your Honor.  I'm very, very sorry.  There's no excuse for
10    wasting the time of the court clerk, court reporter,
11    Mr. Johnson, the defendant, Mr. Singh and, of course, the
12    interpreter.  I am very sorry for the delay.
13              THE COURT:  I accept your apology.  I know that
14    things happen and once we move a little further, you'll see
15    that it probably doesn't matter that you were late because I
16    have some issues too.  So. . .
17              MR. JOHNSON:  Good afternoon, Your Honor.  Peter
18    Johnson on behalf of Harinder Singh who's assisted by our
19    court Punjabi-speaking interpreter Ms. Tejwani.  He is
20    present and prepared for sentencing.
21              THE COURT:  Good afternoon.
22              Okay, everyone.  Here's the issue in this case.
23    Due to the fact that we did not have an interpreter on an
24    earlier sentencing, namely, that for Sucha Singh, his
25    sentencing was continued to August 1st.  Under Section 3553A,
```

1   I am supposed, uh, to come to conclusions that avoid
2   sentencing disparity.
3            We're talking about what is a moving target because
4   just as there is a tremendous range between what the
5   government wants in this case, what Probation has recommended
6   and what you are proposing, in that case we've got the same
7   set of problems.
8            So what I intend to do today is to hear argument
9   and ask you some questions about your very thoughtful papers
10  that you filed, but I am not going to impose sentence today
11  because I frankly think that I don't have enough information
12  to do that, but I at least want to understand your arguments.
13           MR. JOHNSON:  Your Honor, I'm happy to do whatever
14  way the Court wants to proceed.  Um, if it's better just to
15  postpone it after Sucha Singh's case, I'm happy to do that,
16  too.  When the Court lays it out like that, I fully
17  understand.
18           THE COURT:  It's just that I don't have -- the best
19  laid plans in this case go awry because we have so few
20  Punjabi interpreters available.  And, um, I know that they're
21  all well-intentioned.  They've all tried very hard to be
22  here, but many times they're being stretched and asked to be
23  in 12 places at once.
24           So there's a part of me that says since we have an
25  interpreter here today, we should get as far as we should,

```
 1    but if both of you think we ought to defer until after the
 2    Sucha Singh's sentencing, I'm prepared to do that.
 3              MS. CHEN:  Your Honor, I would defer to
 4    Mr. Johnson.  I would say because this is a very important
 5    hearing for his client, I would not be opposed to just
 6    deferring it so we can see what happens at Sucha Singh.
 7              MR. JOHNSON:  And we have no objection to that.
 8    I've pretty much laid out everything what I felt was
 9    important.
10              THE COURT:  You have.  And as I say, though, it's
11    going to be lengthy because as careful as you've been, I just
12    don't fully understand all of your calculations with regard
13    to offense level.  I know what you're saying and I think some
14    of them I understand very well, but some of them I just need
15    a further explanation.  Because, obviously, the government
16    has a very straightforward view which is they think a low end
17    guideline sentence is appropriate.  You're saying that we
18    aren't looking at the right factors for the guidelines.
19              MR. JOHNSON:  Maybe if I can suggest that we go
20    through the guideline, I can summarize what I wrote down in
21    the guideline papers.  I also was going to suggest that if
22    the Court wanted to hear from our expert that he's not here
23    today, but he can be at a future hearing.  And that may help
24    some of the 3553 factors.
25              THE COURT:  Sure.
```

1         MR. JOHNSON:  I'll go through the guideline
2    arguments one-by-one.  The first is that we object to the 18
3    level increase and while we're saying that we're agreeing for
4    the purposes of sentencing that the analysis should be
5    different, obviously we preserve our right to challenge
6    any -- that this would apply at all, but I wanted to be fair
7    and understanding of the guidelines.
8         At page 4 I tried to lay out in a summary chart
9    what would be attributable to the defendant or relevant
10   conduct.  In March and April of 2012, Mr. Harinder Singh was
11   not connected to the extent that the government is alleging
12   in the black hawala transaction at least as it laid out in
13   the trial.
14        Um, the government's theory at trial is that once
15   the money started to get larger, they're delivering to
16   non-ethnic Indian people that that's when he reasonably
17   should have known.  That's the context in which I prepared
18   the reasonable should have known as it relates to the
19   guidelines.
20        And I think that's the way it should apply because
21   he's not connected to the conspiracy as it relates to the
22   other individuals in distinguishing between white hawala
23   which would not be connected to this case, would be
24   legitimate funds sent back to India or wherever and black
25   hawala which would be connected to some form of unlawful

1  activity.
2           What I did was that I said, um, based upon the
3  trial testimony.  Again, this is not based upon what Harinder
4  Singh believed, but based upon the trial testimony, that
5  there was trial testimony from Mr. Wadhwa and from Gurkaran
6  Singh that they were estimating the amount of time.  They
7  said the summer of 2012 that's when they started.
8           What I did was I said okay, assuming those facts
9  are true and assuming the Court believes and it does have
10 evidence to say this is in fact relevant conduct, I included
11 those amounts in there.  I included the amounts all the way
12 to October 16, 2012 where Mr. Harinder Singh was arrested.
13          But as the testimony laid out in trial, and as the
14 facts in the case were laid out is that these individuals
15 were bringing money to Mr. Singh's home and Mr. Singh was
16 storing money in his house.  What I didn't want the Court to
17 do was double count the money that's coming to the house and
18 then count it coming out of the house cause it's the same
19 money.  So I excluded that money from it.
20          I also excluded the money that when Mr. Singh had
21 withdrawn from the conspiracy, that would be just that amount
22 on page 5 in the last part on December 8th, 2012 which would
23 have been, um, the money he had already withdrawn from the
24 conspiracy.  When I did that and the next chart summarizes
25 all that could be possibly connected to Mr. Singh.  And I

1  came out with $2.5 million. And then I recalculated the
2  guidelines instead of having plus 18, I added plus 16 to
3  that.
4        In my next objection which is on page 6, we object
5  to the plus six levels. First, we're arguing that there
6  should be a clear and convincing standard of proof that
7  should apply under the 9th Circuit because it significantly
8  increases the defendant's sentence. Namely, it doubles the
9  potential sentence in this case, the plus six.
10       What I noted for the Court is that the guidelines
11 say that the government has to produce evidence and argue
12 clear and convincing evidence the defendant knew or believed
13 that any of the laundered funds were proceeds of or intended
14 to promote an offense involving the manufacture, importation
15 or distribution of controlled substances.
16       What we've laid out is that the government has not
17 produced that evidence and the Probation Department just
18 assumes that it has. There's no evidence that the Probation
19 Department points to of knowledge related to drugs and we
20 significantly went into this issue that there wasn't, uh,
21 evidence that he knew that it was connected to drugs and
22 we're repeating that again.
23       That he, one, because he didn't -- wasn't connected
24 to any kind of drug trafficker, um, or there was no
25 indication from the money itself that it was connected to

1   drugs so we're disputing that guideline.
2           THE COURT:  Could I ask something?  Are we back to
3   the issue that we have litigated over and over again as to
4   whether your client had to know that the money was connected
5   to an illegal purpose or actual drugs?
6           MR. JOHNSON:  No, no, it's not the same issue
7   because I know the Court has ruled on that.  That under the
8   statute that causes it to be a crime that he didn't have
9   know, but what I'm pointing to now is the guideline
10  enhancement that one, there's money laundering, but it's the
11  defendant knew that it was connected to drug trafficking, it
12  adds six levels.
13          THE COURT:  Right.
14          MR. JOHNSON:  So we're saying no, no, no and that
15  clearly says in the guideline and we're citing it on page 6
16  that 2S1.1 (B)(1) that he knew or believed and that is, uh,
17  that's a standard that the government has to prove here.  And
18  there's no evidence of that here in this record especially
19  not by clear and convincing evidence.
20          THE COURT:  Okay.
21          MR. JOHNSON:  We do agree to the plus two because
22  it was the type of conviction that was there.  And, um, but
23  we're asking that it's a minor role.  A minor role because,
24  well, actually, we did a plus three and we ask that it be --
25  not because it -- we ask it come between minor and minimal.

1  And what I've laid out for the Court and I really wanted the
2  Court to review that.
3              I know the Court has reviewed the expert
4  determination is that when you look at the context of what's
5  happening and you allow, and I know the Court excluded the
6  family, but in looking at it in that context, you see the
7  courier pop out in his mind.  That he's trying to be this
8  responsible courier that goes along.
9              And I think when you examine the role that are
10 related to other people, particularly, Harmeet Singh and
11 Ramesh Singh who were involved longer and had been arrested
12 and said oh, that they didn't -- um, they may say they didn't
13 know, but they had been arrested so they should know.  The
14 same is true for Gurkaran Singh and Sucha Singh that had been
15 involved so much longer.
16             And then look deeper into the conversations where
17 they're talking on the phone saying that he is looking down
18 on him almost as if he's a piece of trash or saying like his
19 caste system privately behind his back, but then talking
20 differently in front of his face.  Under those circumstances,
21 he is emerging and we believe emerged as a courier and should
22 be looked at as a courier.
23             We've come off the four-level minimal role and said
24 that it would be more appropriate to be in the middle because
25 of the amount of time that he was involved in the offense in

1   eight months from March to October 2016.  So therefore we're
2   asking for that middle of the ground.
3           And in an overall sentencing consideration that I
4   think the Court should look at is really whether he learned
5   his lesson on October 16, 2012.  I think in looking at the
6   purposes of the sentences and that he has pulled himself out
7   and really whether you believe that he knew then or didn't
8   know, but the fact is that on October 16th, I'm not -- I'm
9   staying involved in this and I want to say without knowing
10  that an indictment was coming down the pike.
11          THE COURT:  I understand that.  That's sort of a
12  reach into the, you know, why I should in any event, vary
13  whatever I find.
14          MR. JOHNSON:  That's my summary.
15          THE COURT:  Okay, I've got it.
16          Ms. Chen, do you want to respond to any of those
17  today or reserve?
18          MS. CHEN:  I am happy to briefly respond today,
19  Your Honor.
20          THE COURT:  Okay.
21          MS. CHEN:  I think, um, not surprisingly, we have a
22  difference in agreement.  Uh, first of all, I think the trial
23  pretty clearly at least the government believes established
24  the applicability of the plus six enhancement.  We believe
25  that based on the testimony that this Court heard, uh, that

1   the government proved that he knew, uh, that the proceeds
2   were drug proceeds, that the money that he was helping to
3   transfer.
4         I would like to defer as to the clear and
5   convincing versus whether or not it's sufficient in terms of
6   what was presented at trial.
7         We also agree, Your Honor, with the Probation
8   Office that the relevant conduct should be all of it.  I will
9   say I've looked at and, uh, I think the government wouldn't
10  disagree that as of October 2012 that the defendant withdraw.
11  So to the extent that we don't calculate the December 8th,
12  2012 one, I think we would be okay with that.  I don't think
13  it changes it, though.  I think the plus 18 would still be
14  the applicable one.
15        And then, Your Honor, not surprising we disagree in
16  terms of any minor role.
17        THE COURT:  Before you get there, though, let me
18  ask what do you say to Mr. Johnson's, uh, notion that the
19  Probation is double counting?  In other words, they're
20  counting the money when it comes into the house and then out.
21        MS. CHEN:  I think it's not really clear if that's
22  actually what's being counted.  In other words, there are
23  certain discussions, uh, in terms of what, uh, is described
24  on calls and then in terms of, uh, what is actually coming
25  out of the house.  I guess it's not one seizure I think if I

1  understand Mr. Johnson's argument.  Maybe I don't understand
2  it.  But I don't believe there is double counting.  I think
3  based off of the different transactions that are listed, I
4  think it's at Paragraph 45, to me that's not double counting.
5           MR. JOHNSON:  If I can clarify?
6           THE COURT:  Yes.
7           MR. JOHNSON:  If we just look at the seizures, just
8  the seizures, then you would say -- you would see that those
9  aren't counted in.  But when they're saying, uh, 90,000 was
10 delivered here and there's evidence that that money based
11 upon the calls, based upon a cooperator, that money is then
12 building up and being stored in Mr. Singh's, um, home and
13 then retrieved later on counted, um, in the seizures that
14 were in the car and the seizures that were taken from the
15 home.  And it's just those two that are on October 9th, 2012.
16          MS. CHEN:  And, Your Honor, I'm happy to go back
17 and look at it sort of more comprehensibly, but, again, the
18 way I read it, Paragraph 45 of the presentence report seems
19 to be -- it doesn't seem to be double counting based off my
20 quick calculation.  But, again, I understand Mr. Johnson's
21 argument and I would ask at the next hearing that I could
22 more fully address that.
23          THE COURT:  Sure.
24          MS. CHEN:  And then, Your Honor, I think other than
25 that, in terms of the minor role adjustment, I think we've

1  addressed it or at least I hope we addressed it in the
2  sentencing papers, but the bottom line is as we argued at
3  trial, we believe the evidence shows that this is an
4  individual who started off as a courier, and then gradually
5  built up to essentially the same type of role as, and we put
6  this in the sentencing paper, Taran, Ramesh Singh, Harmeet
7  Singh and then Sucha Singh, who was his uncle, and who he
8  essentially tried to cut out of the business.  So we don't
9  believe there should be any kind of, uh, minor role
10 adjustment.
11         THE COURT:  Okay.  I'm not surprised by any of your
12 arguments nor by Mr. Johnson's so I think we just have to
13 pick a time to come back.
14         MR. JOHNSON:  That's fine.  Would the Court mind if
15 I turned on my phone?  The expert had his availability.
16         THE COURT:  I think you should go ahead and do
17 that.
18         MS. CHEN:  And then, Your Honor, may I inquire as
19 to whether this means there will be an evidentiary hearing
20 where the expert will testify and the government would be
21 able to cross-examine him as well?
22         THE COURT:  Well, I think if he's gonna put someone
23 on the stand as an expert, you're going to have the
24 opportunity to cross-examine.
25         MR. JOHNSON:  Absolutely.  I actually was not

1   intending to put him on, but I can put him on if the
2   government has questions of him or the Court has questions.
3   What I thought about today of the Court had read his report
4   and said oh, I have a question about the cultural, that we
5   should address it.  He would be available to speak to the
6   Court, and I would just check his availability.
7              THE COURT:  Frankly, you know, I have read his
8   report.  I guess the point being if we want his report to
9   serve as the proffer for the basis of your requested
10  variance, then I still think the government should have an
11  opportunity to examine him.
12             MR. JOHNSON:  I don't mind at all.  I can put him
13  on or if the government wishes to call him, I don't -- I
14  don't have a problem.
15             MS. CHEN:  I think the government would have to
16  again look at his report a little bit more carefully and see
17  if we would object to him being called at sentencing for
18  issues or factors that may not be relevant.
19             THE COURT:  Well, you know, I guess this.  Um, we
20  obviously have at least a proffer of I would call him a
21  cultural religious expert who opines that the Court -- not
22  that the Court should vary, but opines as to facts that the
23  Court should consider for purposes of determining whether
24  there's a variance.
25             And so for that reason, um, I think that you have

1    ought to have an opportunity, uh, to test some of the
2    assumptions and opinions he renders, uh, and that would help
3    me in determining whether I should give weight to those or
4    not.  But we're talking about probably a hearing where we
5    ought to set aside two hours to get through all of this.
6            MR. JOHNSON:  And I have no problem if after the
7    government reads through the report and may decide okay, we
8    want to challenge that, I'll have him available at the
9    sentencing and I would proffer the report.  I may ask one or
10   two questions, but then open it up to the Court and
11   government.
12           THE COURT:  Okay.  Um, I guess his letter is the
13   report; correct?
14           MR. JOHNSON:  Yes.
15           THE COURT:  Okay.
16           MR. JOHNSON:  That's the letter at Exhibit A.  I
17   have the schedule in front of me and whenever the Court is
18   available.
19           THE COURT:  Well, why don't you tell me what he
20   has.
21           MR. JOHNSON:  He has, um, August 21st -- these are
22   dates he's not available 8-21 to 8-23, 8-27 to 9-1, 9-19 to
23   9-21 and 10-2 to 10-4.
24           THE COURT:  Let me say this.  I would like to
25   resume in August depending on people's schedules.  If you're

```
 1   traveling or something, speak now.
 2              MS. CHEN:  Your Honor, I actually finished a
 3   four-week Rico gang trial and I start one on August 7th
 4   before Judge Klausner, it's four defendants.  I suspect it
 5   will be two to three weeks, probably more like two weeks so I
 6   would ask for late August because I would like to handle this
 7   myself.
 8              THE COURT:  I understand.
 9              MR. JOHNSON:  And I will be on vacation until
10   August 20th.
11              THE COURT:  What this tells me is because of my own
12   schedule, we probably need to go into the first week of
13   September which then gets us to the following problem.  We
14   have multiple trials that week.  I don't know if they're
15   going or not going.  Come September things get really
16   dreadful.  You get back August 20th you say?
17              MR. JOHNSON:  That Monday I will be back.
18              THE COURT:  But that's Ms. Chen, you'll be in trial
19   or recovering.
20              MS. CHEN:  I'm happy to recover in this hearing,
21   Your Honor.  As long as I am out of trial and I apologize, I
22   don't know if Judge Klausner is dark Mondays for trial.
23              THE COURT:  I don't know.
24              MR. JOHNSON:  Can I suggest the last Monday in --
25              THE COURT:  You could except we have a fairly busy
```

```
 1   calendar, I think and I'm leaving the day after.
 2              MR. JOHNSON:  I'm available the first week of
 3   September, second week of September.  Looks like the first
 4   couple weeks of September, we can try to set something.
 5              THE COURT:  Why don't we set it for the Friday at
 6   noon if that's workable, August 24th.  Okay.  Let's do that
 7   and see what happens.  I just don't quite know what to do
 8   when you have three busy people.
 9              MR. JOHNSON:  Your Honor, may I just ask that the
10   expert is a CJA expert and is currently out of hours.  I had
11   the CJA respond back that no additional hours would likely be
12   approved.
13              THE COURT:  I did say that.
14              MR. JOHNSON:  May I ask that additional hours to
15   cover the hearing?
16              THE COURT:  Yes, he may do that.  We'll authorize
17   payment for his appearance in court.
18              MR. JOHNSON:  Would that also include preparation?
19              THE COURT:  Yeah, preparation, travel and
20   appearance.
21              MR. JOHNSON:  Thank you, Your Honor.
22              THE COURT:  Okay?  Thank you, everybody.
23              MS. CHEN:  Thank you, Your Honor.
24              (Proceedings were concluded at 1:00 p.m.)
25
```

```
 1
 2                      CERTIFICATE OF REPORTER
 3
 4   COUNTY OF LOS ANGELES    )
 5                            ) SS.
 6   STATE OF CALIFORNIA      )
 7
 8   I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED
 9   STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,
10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE
11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET
12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN
13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO
14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION
15   OF MY STENOGRAPHIC NOTES.
16
17
18   DATE:  MARCH 5, 2019  _____
19
20        /s/   LAURA MILLER ELIAS
21   LAURA MILLER ELIAS, CSR 10019
22   FEDERAL OFFICIAL COURT REPORTER
23
24
25
```