'O'

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:14-cr-00648-CAS-9 |
| Plaintiff, | |
| v. | **ORDER** |
| HARINDER SINGH, | |
| Defendant. | |

## I. INTRODUCTION AND BACKGROUND

On November 13, 2014, a grand jury indicted defendant Harinder Singh and twenty-one other defendants.[1] The indictment charged defendant with three criminal counts: (1) conspiracy to launder money, in violation of 18 U.S.C. § 1956; (2) conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371; and (3) operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. Dkt. 1 ("Indictment"). The indictment also charged 21 other alleged co-conspirators for their

---

[1] For purposes of this order, the Court refers to Harinder Singh as "defendant" given that there are co-defendants in this case who share his last name.

involvement in what the government describes as a "large-scale Hawala money laundering organization."[2] See generally Indictment.

Defendant's trial commenced on January 9, 2018. Dkt. 869. On January 19, 2018, the jury returned its verdict against defendant, convicting defendant on Counts One, Two, and Three charged in the indictment. Dkt. 889. On February 2, 2018, defendant filed a motion for a new trial and a judgment of acquittal. Dkt. 895. The Court denied defendant's motion on April 2, 2018. Dkt. 937.

On November 26, 2018, the Court sentenced defendant to 70 months in prison and three years of supervised release. Dkt. 1061. During defendant's sentencing, defendant orally moved to be released pending defendant's appeal to the United States Court of Appeals for the Ninth Circuit. Id. The Court denied defendant's motion for bail pending appeal. Id. The Court determined that "there are not really debatable issues as to whether a new trial would be granted or the conviction reversed on appeal." Dkt. 1113 ("Sentencing Tr.") at 56:16–18. The Court also determined that, for the period of time between defendant's sentence and defendant's self-surrender date, defendant was not a flight risk, though defendant "has greater incentive to flee" given the Court's 70-month sentence. Id. at 57:9–20. The Court concluded "that the issue of danger to the community is a neutral issue." Id. at 57:1–2.

On January 29, 2019, defendant filed a motion requesting that the Ninth Circuit grant defendant bail pending appeal. Dkt. 1180-3. Defendant's request to the Ninth Circuit for bail pending appeal raised the same issues as defendant's request for bail which the Court previously denied, including: (1) whether the jury instructions constructively amended the

---

[2]   "The hawala system is widely used in Middle Eastern and South Asian countries, and is primarily used to make international funds transfers. Though there are many forms of hawala, in the paradigmatic hawala system, funds are transferred from one country to another through a network of hawala brokers (i.e., 'hawaladars'), with one hawaladar located in the transferor's country and one in the transferee's country." United States v. Banki, 685 F.3d 99, 103 (2d Cir. 2012).

indictment; (2) whether the Court erred in instructing the jury with respect to willful blindness; and (3) whether the Court erred in instructing the jury with respect to the 18 U.S.C. § 1960 charge. Dkt. 1180-3. The Ninth Circuit denied defendant's request on February 27, 2019, concluding that defendant failed to establish: (1) "that the appeal raises a 'substantial question' of law or fact that is 'fairly debatable'"; (2) that "'if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed,' or a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Dkt. 1100.

On April 13, 2020, defendant filed a renewed motion for bond pending appeal. Dkt. 1180 ("Mot."). The government filed an opposition on April 27, 2020. Dkt. 1181 ("Opp."). Having carefully considered the parties' arguments, the Court finds and concludes as follows.[3]

## II. LEGAL STANDARD

Pursuant to the Bail Reform Act of 1984, "the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for writ of certiorari, be detained, unless the judicial officer finds . . . by clear and convincing evidence that the person is not likely to flee or pose a danger . . . if released . . . and . . . that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in" "reversal," "an order for a new trial," "a sentence that does not include a term of imprisonment," or "a reduced sentence to a term of imprisonment less than the total of the time already served

---

[3] Defendant's motion indicates that, "[i]n light of the novel coronavirus/COVID-19 pandemic and its effect on court proceedings, no hearing is requested." Mot. at 1. In addition, defendant's counsel communicated to the Court that defendant did not intend to file a reply brief.

plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). "[T]he Court must resolve two questions: (1) whether the appellate issues raised by the defendant are 'substantial' and (2) whether those issues are 'likely to result in reversal.'" United States v. Kuburovich, No. 5:16-cr-00373-EJD-1, 2019 WL 6711702, at *1 (N.D. Cal. Oct. 9, 2019) (citing United States v. Handy, 761 F.2d 1279, 1280–81 (9th Cir. 1985)). A "'substantial question' is one that is 'fairly debatable' or 'fairly doubtful.'" Handy, 761 F.2d at 1283 (internal citations omitted). "The defendant . . . need not, under Handy, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions." United States v. Garcia, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003). "The burden is on [d]efendant . . . to overcome the presumption that he should be detained while his appeal is pending." Kuburovich, 2019 WL 6711702, at *1 (citing United States v. Montoya, 908 F.2d 450, 451 (9th Cir. 1990)).

### III. DISCUSSION

Defendant avers that his pending appeal presents "substantial" issues, including, *inter alia*:

> (1) whether the evidence presented at trial was sufficient to prove that the hawala transactions that form the basis for the conspiracy count (Count One) "were *designed* to conceal the nature, location, source, ownership, or control of the funds";
>
> (2) whether the evidence presented at trial was sufficient "to prove that [defendant] conspired to, or did, conduct a money transmitting business which transferred funds 'on behalf of the public,' as required for conviction on Counts Two and Three"; and
>
> (3) whether "[t]he exclusion of evidence concerning key government witness Sanjeev Wadwha's role in a murder-for-hire investigation violated [defendant's] right to confrontation."

Mot. at 5 (emphasis in original). The Court addresses defendant's contentions in turn.

### A. Transaction Money Laundering Conviction

Count One of the indictment charged defendant with conspiring to, *inter alia*, "conduct financial transactions . . . [k]nowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and control of the proceeds . . . in violation of . . . Section 1956(a)(1)(B)(i)[.]" Indictment at 5–6. Defendant avers that "the transactions were designed to pay the Canadian drug trafficker's debts and procure more drugs for sale." Mot. at 5. According to defendant, "under Cuellar v. United States, 553 U.S. 550 (2008), and the cases that followed it," the government's evidence at trial "[wa]s not enough." Mot. at 5.

In Cuellar, the United States Supreme Court interpreted a different provision of the money laundering statute, commonly referred to as the "transportation prong," which "makes it a crime to attempt to transport 'funds from a place in the United States to a place outside the United States knowing that the funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.'" 553 U.S. at 561 (citing 18 U.S.C. § 1956(a)(2)(B)(i)) (internal alterations omitted). The Supreme Court concluded that, with respect to the transportation prong, "merely hiding funds during transportation is not sufficient to violate the statute, even if substantial efforts have been expended to conceal the money." Cuellar, 553 U.S. at 563. That is because "[t]he statutory text makes clear . . . that a conviction under this provision requires proof that *the purpose*—not merely the effect—of the transportation *was to conceal or disguise a listed attribute*." Id. at 567 (emphases added).

Although Cuellar concerned the money laundering statute's transportation prong, rather than Section 1956(a)(1)(B)(i), the statute's transaction prong, various circuit courts of appeal have nonetheless specifically applied Cuellar in cases involving the money laundering statute's transaction prong. See, e.g., United States v. Huezo, 546 F.3d 174, 179 (2d Cir. 2008) ("Cuellar confirms that a conviction for transaction money laundering,

like a conviction for transportation money laundering, requires proof that the purpose or intended aim of the transaction was to conceal or disguise a specified attribute of the funds."); United States v. Brown, 553 F.3d 768, 787 (5th Cir. 2008) (determining, in case arising under money laundering statute's transaction prong, that "we apply the doctrine of Cuellar and hold that the government's evidence is sufficient to satisfy that standard."); accord United States v. Sun, 673 F. App'x 729, 733 (9th Cir. 2016) (unpublished) (determining that the government satisfied "purpose to conceal" element with respect to charge based on transaction prong and citing Cuellar for the proposition that "the government must prove 'that the purpose—not merely effect—of the action was to conceal or disguise a listed attribute.'") (internal alterations omitted).  And, in another case concerning the money laundering statute's transaction prong, albeit one that does not specifically cite Cuellar for the proposition that defendant advances here, the Ninth Circuit determined that "concealment money laundering merely requires that the financial transaction be designed to 'conceal the source or control of the proceeds of the specified unlawful activity.'" United States v. Wilkes, 662 F.3d 524, 547 (9th Cir. 2011) (internal alterations omitted).  Thus, the money laundering statute's transaction prong "criminalizes behavior that masks the relationship between an individual and his illegally obtained proceeds[.]" Id. at 545 (internal citation and quotation marks omitted).  On the other hand, "where a defendant takes no steps to disguise or conceal the source or destination of the funds, leaving an easy-to-follow trail in moving money around, those transactions conspicuously lack the 'convoluted' character associated with money laundering." Id. (internal citation and quotation marks omitted).

   Where, as here, a defendant challenges a conviction based on insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  Here, the government presented evidence at trial sufficient to establish that defendant participated in the conspiracy, knowing that its "purpose" was to

-6-

conceal the nature of the funds at issue in this case. For example, Donald Semesky, a former law enforcement official with the Internal Revenue Service, testified on behalf of the government that hawala transactions are difficult to trace, opining that narcotics trafficking organizations therefore knowingly seek to avail themselves of hawala networks. See generally Dkt. 873. In addition, Semesky testified that the network in this case engaged in a series of convoluted transactions spanning multiple countries including Canada, India, and the United States and that each transaction involved multiple steps, including "the use of coded language in the communications and the production of a token so that . . . when the hawaladar turned the money over to the Mexican drug cell, only upon the production of that token, which in this was a serial number on a dollar bill, they knew exactly who they were giving the money to." Id. at 23, 26; accord John K. Villa, Banking Crimes: Fraud, Money Laundering & Embezzlement, § 8:25: Knowledge that the transaction is designed to disguise characteristics of the proceeds—Subsection 1956(a)(1)(B)(i) (Nov. 2019) ("Courts have permitted a jury to infer intent to conceal . . . where a defendant engages in specified illegal activity, then moves the proceeds of that activity through several accounts, transfers the funds out of the country, transfers assets to a corporation, or deposits funds into a corporate account or into the account of another."); cf. United States v. Simon, No. 07-cr-0087-WFN-2, 2008 WL 4911894, at *2 (E.D. Wash. Nov. 12, 2008) (granting motion for judgment of acquittal on transaction money laundering charge because "[t]he transaction was not circular or secretive. If it had been, it could have provided some circumstantial evidence of intent to conceal or disguise.").

Additional testimony at trial specifically tied defendant to the hawala network, providing ample evidence from which the jury could rationally conclude that defendant knew the purpose of the hawala network was to conceal the nature of proceeds being transferred. Gurakan Isshpunani, one of defendant's co-conspirators, testified that he instructed defendant to regularly change defendant's phone and to drive carefully and that Isshpunani gave these instructions because Isshpunani did not want law enforcement to seize the money. Dkt. 1109 at 41:11–17; Dkt. 1078 at 39:17–41:1. Indeed, Semesky

provided similar testimony—based on cooperating witnesses' debriefing reports that Semesky reviewed prior to trial—that defendant specifically "was instructed to dump his phones after certain law enforcement actions, after arrests; and that he was told not to drive fast in his . . . pickup truck because he could be pulled over by the police and he wouldn't be able to explain . . . the cash that he had." Dkt. 873 at 61:24–62:6. Finally, the jury heard testimony from Darren Nannini, the California Highway Patrol officer who initiated the traffic stop of defendant's vehicle which led to the discovery of cash inside defendant's vehicle. Nannini testified that that, during the traffic stop, Nannini observed block-shaped objects wrapped in plastic—which turned out to be cash—and defendant attempted to conceal the nature of these objects by telling Nannini that they were his "wife's shoes." Dkt. 1084 at 39:13–19.

For the foregoing reasons, the Court concludes that defendant has failed to establish a "substantial issue" for appeal regarding defendant's money laundering conviction.

### B. Unlicensed Money Transmitting Business Convictions

The jury also convicted defendant of conspiring to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371, and operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960. Defendant contends that his convictions on these charges present an additional "substantial issue" for appeal because, according to defendant, "[t]he evidence was insufficient to prove that [defendant] conspired to, or did, conduct a money transmitting business which transferred funds 'on behalf of the public[.]'" Mot. at 5.

Section 1960 forms the basis for both defendant's substantive unlicensed money transmitting business and conspiracy convictions. "To establish a violation of section 18 U.S.C. § 1960(a), the government must prove that a defendant knowingly conducts, controls, manages, supervises, directs, or owns an unlicensed money transmitting business." United States v. $166,450.48 in U.S. Currency, No. 3:13-cv-00562-MA, 2013 WL 6623176, at *1 (D. Or. Dec. 16, 2013). A "money transmitting business can violate § 1960 by either failing to register pursuant to federal regulations or by failing to register

pursuant to the state's law in which the money transmitting business was operating." United States vs. Coppola, No. 14-cr-117-BLG-SPW-02, 2016 WL 3926254, at *3 (D. Mont. July 18, 2016). Section 1960 "addresses 'knowing conduct,' but it does not require knowledge of any state's licensing requirement or knowledge of any licensing violation." MH Pillars Ltd. v. Realini, No. 15-cv-01383-PJH, 2018 WL 1184847, at *5 (N.D. Cal. Mar. 7, 2018).

For the purposes of Section 1960, the "term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier[.]" 18 U.S.C. § 1960(b)(2). Defendant argues that the statute's "on behalf of the public" language means that "transmitting funds 'on behalf of the public' is an essential element of a violation of § 1960." Dkt. 1180-5 at 31. According to defendant, then, because defendant "did not advertise his services, and all of the people for whom he picked up or delivered cash had been introduced to him through some[one] he knew, . . . [h]is services were not available to the 'public.'" Id. at 32. In response, the government argues that a "statutory definition's use of the word 'includes' suggests that what follows 'is non exhaustive rather than exclusive.' Thus, use of the word 'includes' in § 1960's text does not limit the definition to the listed conduct or make the listed conduct an essential element of § 1960." Opp. at 10–11 (internal citations omitted).

Both parties acknowledge that the Ninth Circuit has not directly addressed the issue. And, district courts outside the Ninth Circuit have reached contrary conclusions. See, e.g., United States v. Emilor, S.A., No. 6:07-cr-1, 2008 WL 2152279, at *12 (E.D. Tex. May 21, 2008) ("Through the use of 'includes,' the statutory intent of Section 1960(b)(2) is to bring the conduct expressed in this subsection within the meaning of 'money transmitting,' but not to limit its definition to the expressed conduct or to make the expressed conduct an essential element of the offense."); cf. United States v. $21,408.00 in U.S. Currency, No. 4:10-cv-138, 2010 WL 4687876, at *5 (S.D. Ga. Nov. 10, 2010) ("No facts alleged by the Government in the Complaint support a reasonable belief that Najdek engaged in or

intended to engage in the transfer of funds 'on behalf of the public.'  The Government has therefore failed to allege that Najdek's cash subject to forfeiture as proceeds traceable to a violation of 18 U.S.C. § 1960."); accord United States v. Murgio, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("to qualify as an 'unlicensed money transmitting business' under § 1960, a business must a) transfer, *on behalf of the public*, b) funds, and c) do so in violation of state or federal licensing and registration requirements, or with knowledge that the funds were derived from a criminal offense.") (emphasis added).

Even assuming *arguendo* that Section 1960 requires that an individual transmit funds "on behalf of the public," the government presented sufficient evidence for the jury to rationally conclude that defendant did so in this case.  For example, in United States v. $215,587.22 in U.S. Currency, a case upon which defendant principally relies, a district court in the District of Columbia concluded that, to the extent Section 1960 requires a transfer of funds "on behalf of the public," "the government has nonetheless alleged that Mr. Szlavik operated a business 'on behalf of the public.'"  306 F. Supp. 3d 213, 218 (D.D.C. 2018).  In that case, the court rejected the transferor's argument that the government had failed to satisfy any "on behalf of the public" element because the transferor "catered solely to a single client."  Id. (internal alteration omitted).  That is because "the Court does not read the 'on behalf of the public' requirement to turn on the number of customers the money transmitter has.  Rather, the most natural reading of the phrase is that the money transmissions must be made for third-parties or customers as part of a commercial or business relationship, instead of with one's own money or for family or personal acquaintances."  Id.  The court credited "allegations . . . that Mr. Szlavik was compensated for the alleged money transfers as part of a business relationship."  Id.

Here, the government presented evidence at trial that defendant completed transmissions for third-parties and that defendant was compensated for his services.  Indeed, Isshpunani testified that defendant assisted Isshpunani with transfers on behalf of Deepinder "Pindi" Singh.  See Dkt. 1109 at 8:18–22, 40:7–13.  Isshpunani further testified that he paid defendant a $250.00 commission for every $100,000.00 in currency that

defendant helped Isshpunani transfer. Dkt. 1109 at 57:24–58:12; cf. $215,587.22 in U.S. Currency, 306 F. Supp. 3d at 218 (finding "on behalf of the public" element satisfied where transferor "was compensated for the alleged money transfers as part of a business relationship."). Accordingly, assuming *arguendo* that Section 1960 requires an individual to transfer funds "on behalf of the public," defendant's appeal does not present a "substantial issue" with respect to his unlicensed money transmitting business convictions.

### C. Exclusion of Impeachment Evidence Regarding Sanjeev Wadwha

Defendant also argues the Court's "exclusion of evidence concerning key government witness Sanjeev Wadwha's role in a murder-for-hire investigation violated [defendant's] right to confrontation." Mot. at 5. The Court previously addressed this issue in its order denying defendant's motion for a judgment of acquittal or a new trial. Dkt. 937 at 7. In sum, the Court "limit[ed] the scope of cross-examination of a cooperating witness, Sanjiv Wadwha, on the grounds of avoiding a mini-trial regarding whether Wadwha participated in a murder-for-hire plot concerning an informant in this case, T. Singh." Id. During the trial, "defense counsel argued that cross-examination regarding the alleged murder-for-hire plot would be probative of Wadwha's willingness to lie in an attempt to obtain a lesser sentence[.]" Id. at 8. The Court limited the scope of cross-examination of Wadwha, "particularly in light of the FBI's conclusion that the alleged murder-for-hire plot . . . was unsubstantiated." Id. Similarly, the Court precluded admission of audio recordings and evidence from the FBI's investigation of Wadwha's actions. The Court did, however, permit defense counsel to ask Wadwha whether Wadwha "agree[d] to have Taran Singh murdered," which Wadwha denied. Dkt. 1084 at 32:1–8.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Generally speaking, "[t]he Confrontation Clause guarantees criminal defendants the right to cross-examine government witnesses regarding their 'biases and motivations to lie.'" United States v. Nickle, 816 F.3d 1230, 1235 (9th Cir. 2016). "But trial judges retain wide latitude insofar

-11-

as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." Nickle, 816 F.3d at 1235 (internal citation and quotation marks omitted).

Here, defendant argues that the Court erred in limiting the admission of evidence and cross-examination regarding Wadwha's role in the alleged murder-for-hire plot in three respects: (1) exclusion of evidence regarding Wadwha's alleged bias violates defendant's Sixth Amendment confrontation rights; (2) Rule 608(b) does not bar the admission of evidence concerning Wadwha's role in the alleged murder-for-hire plot; and (3) "[t]he [C]ourt did not invoke Rule 403 or engage in the explicit weighing of probativity versus prejudice required under that rule." Dkt. 1180-5 at 38–44. The Court does not find defendant's arguments availing.

To justify bail pending appeal, defendant must point to a "substantial question" that, if "determined favorably to defendant on appeal, . . . is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." Handy, 761 F.2d at 1283. With respect to defendant's Sixth Amendment challenge, courts consider a number of factors, including, *inter alia*, "whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." United States v. Larson, 495 F.3d 1094, 1103 (9th Cir. 2007) (en banc) (internal citation and alteration omitted). Defendant's counsel established, on cross-examination, that Wadwha entered into a guilty plea agreement with the government in the hopes of obtaining a reduced sentence, see dkt. 1079: at 53:17–19, 68:5–22, giving the jury a basis to doubt Wadwha's credibility, which the jury was free to reject. With respect to defendant's arguments regarding Rules of Evidence 403[4] and 608(b), "[i]n the context of an appeal based on a

---

[4]  Defendant's contention that the Court "did not invoke Rule 403 or engage in the explicit weighing of probativity versus prejudice required," dkt. 1180-5 at 44, misstates the record. The Court did, in fact, weigh the probative value and prejudice of testimony regarding Wadwha's role in the alleged murder-for-hire plot. See Dkt. 1078 at 73 ("I'm not going to have a trial on whether there was, in fact, a murder-for-hire plot . . . because I think that [these issues] are collateral, time-consuming, and unfairly prejudicial, and they're going to diver the jury from this case."); cf. Fed. R. Evid. 403 ("The court may

district court's evidentiary rulings, 'such decisions will be reversed for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict.'" United States v. Bondaruk, No. 2:11-CR-00450-TLN, 2019 WL 266451, at *2 (E.D. Cal. Jan. 18, 2019) (internal alteration and citation omitted). As the Court previously determined in denying defendant's motion for a new trial, even if the Court "had permitted unfettered cross-examination of Wadwha regarding his involvement in the alleged murder-for-hire plot, other co-defendants . . . testified as cooperating witnesses against defendant, and their testimony provided substantial evidence regarding defendant's involvement in the crimes charged." Dkt. 937 at 9.

Accordingly, the Court's evidentiary rulings regarding Wadwha's role in an alleged murder-for-hire plot do not present a "substantial issue" for appeal that "is likely to result in reversal or an order for a new trial[.]" Handy, 761 F.2d at 1283.

### D. COVID-19 Concerns

Defendant also argues that "[t]he unprecedented [COVID-19] public health crisis warrants this renewed application and this Court's reconsideration of the bail request." Mot. at 10. Defendant does not, however, aver that he suffers from any illness or medical condition which makes him uniquely vulnerable to COVID-19. Accordingly, defendant's generalized COVID-19 concerns do not provide a basis for granting defendant bail pending his appeal. See United States v. Pawlowski, No. 18-3390 (3d Cir. May 4, 2020) (Dkt. 103) (denying inmate's motion for release pending appeal based upon COVID-19 grounds because "there is no statutory authority for bail in this case" and inmate "has not met his burden in proving that his appeal raises a substantial question of fact or law.") (internal citation omitted); accord United States v. O'Neal, No. 1:18-cr-00020-JDL, 2020 WL 2069206, at *2 (D. Me. Apr. 29, 2020) ("I am mindful of the health risks O'Neal faces

---

exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

while in federal custody during the COVID-19 pandemic. However, he has not shown that either of his two bases for appeal presents a substantial question of law or fact[.] Accordingly, he is not eligible for release, and his emergency motion for bail pending appeal is **DENIED**." (emphasis in original) (internal citation omitted) see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation.").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's renewed motion for bail pending appeal.[5]

**IT IS SO ORDERED.**

DATED: May 27, 2020

*Christina A. Snyder*

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court concludes that defendant fails to raise a "substantial question" on appeal pursuant to Section 3143(b)(1)(B), the Court does not decide whether defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(b)(1)(A).